UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JUSTIN KYLE PHELPS, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | |
| v. | ) ) | Nos. 3:20-CV-025 3:17-CR-089 |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |

## **MEMORANDUM OPINION**

Before the Court is Justin Kyle Phelps' ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 71].[1] The United States has responded in opposition [Doc. 7], and Petitioner filed a reply [Doc. 8]. Petitioner has also filed a motion to appoint counsel and a motion for hearing [Doc. 13] which are pending before this Court. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 71] will be **DENIED**, his motion for counsel [Doc. 13] will be **DENIED**, and his motion for a hearing [*Id*.] will be **DENIED as MOOT**.

I. **BACKGROUND**

On March 24, 2017, Petitioner was arraigned on a Criminal Complaint [Crim. Doc. 1]. On March 29, 2017, the United States moved for a competency hearing for Petitioner,

---

[1] Document numbers not otherwise specified refer to the civil docket.

which defense counsel joined, and the Court granted. After a hearing on March 31, 2017, Petitioner was sent to the Bureau of Prisons ("BOP") for a competency evaluation. [Crim. Docs. 10, 12, & 14]. On April 5, 2017, Petitioner filed a notice to use an insanity defense. [Crim. Doc. 13]. On August 15, 2017, Petitioner was charged in an eight-count indictment pertaining to the attempted enticement of several minors to engage in sexual activity, the attempted enticement of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, and the attempted transfer of obscene material to a minor, along with forfeiture allegations. [Crim. Doc. 19]. After receiving Petitioner's evaluation report from the BOP [Crim. Doc. 29], the Court held a hearing and determined that Petitioner was competent to proceed to trial. [Crim. Doc. 22].

On June 26, 2018, Petitioner entered into a plea agreement with the Government. [Crim. Doc. 40]. Petitioner agreed to plead guilty to five counts of knowingly persuading, inducing, enticing, or coercing an individual under the age of 18 years to engage in unlawful sexual activity, or attempt to do so, by using means or facility of interstate commerce in violation of 18 U.S.C. § 2422(b); and one count of knowingly using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in interstate commerce in violation of 18 U.S.C. § 2251(a). [*See id.*]. The plea agreement was signed by Petitioner and attorney Russell T. Greene ("Attorney Greene"). [*Id.*].

In his plea agreement, Petitioner acknowledged that he established two personas on Facebook – one female persona under the name, "Vickie Reddington," and one male persona under the name of "Justin Meh." Petitioner utilized the personas and Facebook

2

Messenger to establish online acquaintances and befriend minor females and males to entice them to meet him for the purpose of having sex. Petitioner also used Facebook Messenger to direct minors to take digital photographs of themselves engaged in sexually explicit conduct to send to him.

On or about December 19, 2016, Petitioner, who was 25 years old at the time, knowingly attempted to entice a minor female, T.Z., who Petitioner knew was 12 years old at the time, to perform oral sex on him in communications through Facebook Messenger. On or about December 19, 2016, Petitioner also knowingly enticed a minor female, S.N., who Petitioner knew was 14 years old at the time, to have sex with him in communications through Facebook Messenger. On or about December 30, 2016, Petitioner knowingly enticed a minor female, S.L., who Petitioner knew was 15 years old at the time, to have sex with him in communications through Facebook Messenger. On or about January 3, 2017, Petitioner knowingly attempted to entice a minor male, A.M., who Petitioner knew was 12 years old at the time, to have sex with him in communications through Facebook Messenger. On or about February 12, 2017, Petitioner knowingly attempted to entice a minor female, A.D., who Petitioner knew was 13 years old at the time, to have sex with him in communications through Facebook Messenger. On or about March 3, 2017, Petitioner knowingly employed, used, induced, and enticed a minor, C.H., who Petitioner knew was 12 years old at the time, to photograph herself engaged in sexually explicit conduct, that is with toothbrushes and pencils inserted into her anus and vagina, and send them to him via Facebook Messenger. [*Id*. at 3-5].

Petitioner also agreed not to file a direct appeal of his sentence unless it was above the sentencing guidelines range or any mandatory minimum sentence, whichever was greater; that either party violating the terms of the plea agreement would not give Petitioner grounds to withdraw his guilty plea; that Petitioner would not file any post-conviction motions or collaterally attack his conviction or sentence except for instances of prosecutorial misconduct or ineffective assistance of counsel; and that Petitioner was pleading guilty because he was guilty. [*See id*.].

On July 2, 2018, Petitioner's counsel filed a motion to withdraw as attorney [Crim. Doc. 41], which was orally withdrawn during the hearing on Petitioner's motion to withdraw as attorney. [Crim. Docs. 42 & 43]. The Court conducted a change of plea hearing on July 10, 2018. At the hearing, the Court arraigned and specifically advised Petitioner of his rights pursuant to Rule 11, specifically advised Petitioner of the constitutional rights he was waiving by pleading guilty, informed Petitioner of the maximum and minimum punishments for each of his convicted offenses, determined that Petitioner was competent to plead guilty, and referred Petitioner for a Presentence Investigative Report ("PSR"). [Crim. Doc. 80]. At the hearing, Petitioner stated under oath that he had not taken any drugs, medicine, pills, or alcoholic beverages of any kind in the 24 hours prior to the hearing; that he had told Attorney Greene everything he knew about the case; had been advised of defenses and the terms of the plea agreement by Attorney Greene; that he was satisfied with Attorney Greene's representation; and that no Government officer or other agent had promised leniency or a specific sentence in exchange for Petitioner's guilty plea. [*Id*.].

The PSR calculated a total offense level of 39 and a criminal history category of I, resulting in a guideline range of 262 to 327 months. [Crim. Doc. 51, ¶ 124]. Counts 1, 2, 4, 6, and 7 carried statutory mandatory minimum sentences of 10 years and Count 8 carried a statutory mandatory minimum sentence of 15 years. The PSR also noted that, but for Petitioner's plea agreement dismissing Counts 3 and 5, his guidelines range would likely have been higher. [*Id.* at ¶ 129].

The Government filed a notice of no objections to the PSR. [Crim. Doc. 52]. The Government also filed a sentencing memorandum wherein it concurred that the correct advisory guideline calculation was 262 to 327 months' imprisonment and requested a sentence within that guidelines range followed by 20 years of supervised release. [Crim Doc. 53].

Petitioner did not file any objections to the PSR, nor did he file a notice of no objections to the PSR. Petitioner, through counsel, filed a sentencing memorandum, requesting a downward variance from the advisory guideline range, arguing that the two-level increase for use of a computer was not a "genuine aggravating factor because it is present in nearly every child pornography case today." [Crim. Doc. 58] (internal quotations omitted). Petitioner, through counsel, further argued that Petitioner's numerous and serious mental health issues warranted a sentence below the advisory guidelines range and that a below-guideline sentence would achieve general deterrence. [*Id.*].

On December 20, 2018, after hearing arguments on Petitioner's motion for a downward variance, including testimony from Dr. James Murray as to Petitioner's mental health, the Court sentenced Petitioner to a total of 300 months' imprisonment as to each

5

count to run concurrently, followed by 10 years of supervised release. [Crim. Docs. 63 & 64]. Petitioner did not file a direct appeal, but on January 3, 2020, he filed this timely § 2255 motion. [Doc. 1; Crim. Doc. 71].

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner seems to raise four ineffective assistance of counsel claims in this § 2255 motion: 1) for failing to provide Petitioner with his case file prior to him filing the instant § 2255 motion; 2) for failing to provide Petitioner with evidence prior

7

to trial of a valid search warrant and computer chat logs which show entrapment; 3) for unduly pressuring Petitioner to plead guilty by telling him the Government would add 10 years to Petitioner's 15 to life sentence range if he did not plead guilty, making his guilty plea not truly knowing and intelligent; and 4) for failing to investigate Petitioner's competency and mental health. [Doc. 1; Crim. Doc. 71]. Petitioner also has two non-dispositive motions pending before the Court. [Doc. 13]. The Court will first address the ineffective assistance claims before addressing the non-dispositive motions.

### A. Ineffective Assistance of Counsel Claims

#### 1. Legal Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.

8

The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 2. Claim 1 – Ineffective Assistance for Failing to Surrender Case File

Petitioner alleges that prior to filing the instant § 2255 motion, he requested several times to obtain a copy of his entire criminal case file from Attorney Greene. [Doc. 1, p. 4]. Petitioner contends that it is not possible for him to complete a proper § 2255 motion without being able to reference the criminal file. [*Id*.]. The Government responds that because Petitioner has no constitutional right to an attorney at this stage in the proceedings, there can be no ineffective assistance. [Doc. 7, p. 7].

Petitioner's claim fails at *Strickland's* second step. To prevail on a § 2255 claim, Petitioner must demonstrate an error of constitutional magnitude which had a substantial and injurious effect or influence on the *criminal proceedings*. *See Reed*, 512 U.S. at 353

9

(emphasis added). The fact that Petitioner allegedly had no access to his case file after his criminal matter was resolved could not have affected his guilty plea or sentencing as they had already occurred. Petitioner thus cannot establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Further, it is well established that there is no constitutional right to counsel in post-conviction proceedings so there can be no ineffective assistance of counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (observing that the "right to appointed counsel extends to the first appeal of right, and no further"); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (noting that the constitutional right to counsel does not extend to collateral proceedings). Accordingly, Claim 1 will be **DENIED** as Petitioner is not entitled to relief as to this claim.

### 3. Claim 2 – *Ineffective Assistance for Violating Petitioner's Constitutional Right to Have Access to All Evidence*

Petitioner alleges that Attorney Greene failed to present critical documents for Petitioner's review prior to his guilty plea. Petitioner contends that he should have been shown "evidence of there being a valid search warrant," "computer chat logs where the government possibly committed entrapment," and evidence that Petitioner "blocked" someone on Facebook that he knew was an adult police officer who was harassing him and alleges that he only met the person to get them to stop harassing him. [Doc. 1, p 5]. The Government responds that Petitioner has not identified information withheld or unknown to him or how reviewing that information would have changed the outcome of his case. [Doc. 7, p. 5]. The Government argues that Petitioner should know better than anyone

10

whether he conversed online with minors and enticed them into sexual activity or child pornography, and the Court can rightly presume that Petitioner would not have pleaded guilty unless the underlying facts were actually true. [*Id*. at 5-6].

The Court first notes that Petitioner chose to plead guilty and did not file a motion to suppress evidence or proceed to trial. A defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). Having waived his right to hold the Government to its burden of proof, Petitioner cannot complain the evidence against him would have been insufficient or "illgotten and the fruit of a poisonous tree."

At the change of plea hearing, the United States set forth the factual allegations against Petitioner. [Crim. Doc. 80, pp. 11-13]. Directly after that, the Court asked Petitioner whether he heard what the Government said and whether he agreed that he did what the Government said he did. [*Id*. at 13]. Petitioner replied to both questions with, "Yes, Your Honor." [*Id*.]. Petitioner also affirmed, under oath, at his change of plea hearing that he wanted to plead guilty, that he understood what he was pleading guilty to, and that he was offering to plead guilty because he was in fact guilty. [*Id*. at 14]. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner's Claim 2 fails at *Strickland's* second step. Petitioner has not shown that a motion to suppress the evidence would have

11

been successful, nor has he shown that he would have proceeded to trial, but for counsel's mis-advice.

Second, to the extent that Petitioner is alleging that the evidence should have been suppressed, Petitioner did not raise this claim on appeal and is procedurally defaulted from raising it now. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citing *United States v. Frady*, 456 U.S. 152, 167-168 (1982), and *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)). Petitioner has not attempted to show cause and prejudice for not raising this issue on appeal.

Accordingly, Petitioner has not met his burden to establish prejudice under the *Strickland* standard and Claim 2 will be **DENIED**.

### 4. *Claim 3 – Ineffective Assistance for Unduly Pressuring Petitioner to Plead Guilty*

Petitioner alleges that his guilty plea was not knowing and intelligent because it was allegedly based on Petitioner receiving a sentencing range of 15 years to life, the threat that the Government would add 10 years to that range if Petitioner did not plead guilty, and an extraordinary amount of pressure to plead guilty applied at the last minute even though Petitioner did not want to plead guilty. [Doc. 1, p. 6]. The Government responds that Petitioner's claim is contradicted by the record and should not be credited. [Doc. 7, p. 6].

First, the sentence range Petitioner alleges was used to coerce him was a fair and correct estimation of Petitioner's sentencing range. Based on Count 8, Petitioner was facing a statutory mandatory minimum sentence of 15 years, and based on the other counts,

12

Case 3:20-cv-00025-RLJ-JEM   Document 23   Filed 03/23/22   Page 12 of 17   PageID #: 103

Petitioner was facing a statutory mandatory maximum sentence of Life. [Crim. Doc. 80, p. 10]. Petitioner has not established that counsel's performance was unreasonable under prevailing professional norms. Further, "even if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record'" during the plea colloquy. *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299 (6th Cir. 2016) (quoting *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993)). A proper plea colloquy, as was held in this case, "cure[s] any misunderstanding [a defendant] may have had about the consequences of his plea." *Id*. at 299–300 (*quoting Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

Second, Petitioner affirmed under oath that no person, including an officer or agent of the Government, had put any pressure on him to plead guilty nor had any Government official promised a lighter sentence or leniency. [Crim. Doc. 80, p. 8]. As stated above, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Petitioner's subsequent unsupported conclusory allegations that he was pressured into pleading guilty are directly contradicted by the record and are not credited. *Id*. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Finally, the decision to plead guilty or proceed to trial lies with Petitioner, and Petitioner alone. *Jones,* 463 U.S. at 751. There is nothing in the record to support Petitioner's contention that his guilty plea was not voluntarily or unknowingly made.

Accordingly, Claim 3 will be **DENIED** as Petitioner has not established deficient performance or prejudice as to this claim.

### 5. *Claim 4 – Ineffective Assistance for Failing to Investigate Petitioner's Competency and Mental Health*

Petitioner alleges that his counsel was ineffective for failing to investigate Petitioner's competency and mental health. [Doc. 1, p. 8]. Petitioner argues that he "effectively has the mind of a child[2]" and that his "mental immaturity was a major factor underlying Petitioner's actions." [*Id*.]. Petitioner further alleges that the BOP evaluation of Petitioner's competency was biased and fundamentally flawed, that the defense psychological evaluation was not used, and that other documents could have been produced that would have been exculpatory. [*Id*.]. The Government responds that the record shows that Attorney Greene joined in the Government's motion for the competency evaluation, hired an independent expert to review the results of that evaluation, contemplated an insanity defense, and argued for a lighter sentence due to Petitioner's mental health issues. [Doc. 7, p. 5] (internal citations omitted).

Petitioner's unsupported allegations regarding his counsel's failure to investigate Petitioner's mental health issues are directly contradicted by the record and are not credited. *See Blackledge*, 431 U.S. at 74. Petitioner's counsel filed a motion for a downward variance specifically citing to Petitioner's mental health issues and had an

---

[2] The Court notes that while Petitioner claims to "have the mind of a child," he presents his arguments for post-conviction relief and for appointment of counsel with intelligence and sophistication, contradicting this assertion.

14

expert testify on Petitioner's behalf about his mental health at the sentencing hearing. *See* [Crim. Docs. 58 & 63]. Counsel cannot be deemed ineffective for doing precisely what Petitioner now claims he should have done. Petitioner has not shown what more Attorney Greene could have done or provided to the Court that would have changed the result of the proceeding. Accordingly, Petitioner's Claim 4 will be **DENIED** as the record directly contradicts Petitioner's claim, and Petitioner has not shown that he was prejudiced by any alleged ineffectiveness of counsel.

### B. Non-Dispositive Motions [Doc. 13]

#### 1. *Motion for Counsel*

Petitioner filed a motion for appointed counsel, requesting the Court appoint him an attorney "so that an evidentiary hearing may take place in a timely fashion." [Doc. 13, p. 4].

As stated above, there is no constitutional right to counsel in post-conviction proceedings. *See Finley*, 481 U.S. at 555; *Foster*, 345 F.2d at 676. However, a district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." *See Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987). In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

Here, Petitioner has adequately presented his claims to the Court without the benefit of counsel, and the Court has found the issues to be without merit. None of Petitioner's

claims are legally or factually complex to warrant counsel. Petitioner has also failed to offer any material facts that would justify the appointment of counsel. Accordingly, his motion for counsel [Doc. 13] will be **DENIED**.

### 2. *Motion for Hearing*

Petitioner has also filed a motion for an evidentiary hearing. [Doc. 13]. As stated above, the Court has found no need for an evidentiary hearing in this case and has found that Petitioner is not entitled to relief as to any of his claims. Accordingly, Petitioner's motion for an evidentiary hearing [Doc. 13] will be **DENIED as MOOT**.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 71] will be **DENIED** and **DISMISSED**. Petitioner's motion for counsel [Doc. 13] will be **DENIED**, and his motion for an evidentiary hearing [*Id*.] will be **DENIED as MOOT**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of

16

Case 3:20-cv-00025-RLJ-JEM   Document 23   Filed 03/23/22   Page 16 of 17   PageID #: 107

the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge